The STATE of Ohio, Appellee,

v.

DOWNIE, Appellant.

[Cite as State v. Downie, 183 Ohio App.3d 665, 2009-Ohio-4643.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 07 MA 214.

Decided Aug. 28, 2009.

</div>

666

Iris Torres Guglucello, Director of Law, and Anthony J. Farris, Deputy Law Director, for appellee.

Michael L. Hoza, for appellant.

WAITE, Judge.

{¶ 1} Appellant, William Downie, appeals his convictions and sentences in Youngstown Municipal Court in four consolidated cases for eight violations of the Youngstown Housing Code.

{¶ 2} On or about July 7, 2006, appellant was served with three separate but identical complaints. Each complaint alleged two violations of the Youngstown

Housing Code, misdemeanors of the third degree, based upon appellant's failure to maintain the exterior-structure and exterior-property areas on three properties located on Fifth Avenue. Appellant was represented by attorney Alden Chevlen on those cases.

{¶ 3} On October 8, 2006, appellant pleaded no contest to all six charges and was found guilty. Apparently, appellant's no-contest plea was based on an agreement with the prosecutor. As a part of the plea agreement, appellant authorized the city to demolish the structures on the three properties and agreed to "repay the City of Youngstown for all its expenses and costs in demolishing, testing, and abating said structures within one year of the date of [the] entry or six months following completion of demolition whichever was later." Although the written plea agreements were a part of the record, the audiotape recording of the plea hearing could not be found.

{¶ 4} On October 27, 2006, appellant was served with a fourth complaint, alleging the same two violations as asserted in the original complaints but regarding a property on Brentwood Avenue. On December 5, 2006, appellant appeared without counsel, entered a plea of no contest to both charges in the fourth complaint, and was found guilty. Appellant agreed to pay the demolition costs of the Brentwood Avenue property directly. During the plea colloquy, the trial court inquired, "Do you understand you are also waiving your right to have a lawyer with you?" Appellant replied, "Correct." The foregoing exchange represents the entire colloquy on the subject of self-representation.

{¶ 5} On March 1, 2007, the trial court conducted a sentencing hearing on the Brentwood Avenue case. Appellant advised the trial court that demolition was scheduled and that approximately half of the cost of demolition had been paid. The trial court continued the hearing to March 22, 2007. On that date, appellant informed the trial court that the demolition was scheduled to proceed, and the trial court continued the hearing to April 12, 2007.

{¶ 6} The Fifth Avenue structures were demolished on or about April 9, 2007, and the Brentwood Avenue structure was demolished at about the same time. At a status hearing on April 12, 2007, counsel for the city acknowledged that a final bill had not been sent to appellant regarding the Fifth Avenue properties. Because as part of the plea agreement appellant agreed to pay for costs associated with the demolition of these properties within a designated time period, counsel for the city suggested that the sentencing hearing be scheduled after the deadline set forth in the plea agreement. The trial court was also informed that attorney Chevlen had moved out of state. Thus, appellant was to find new counsel to represent him in the Fifth Avenue matter.

{¶ 7} Despite the city's suggestion to continue the hearing beyond the deadline identified in the plea agreement, the trial court consolidated the cases and

scheduled the combined sentencing hearing for May 3, 2007. At the end of the April status hearing, when discussing the possibility that appellant might receive a sentence of probation for the charges relating to the Fifth Avenue properties on the condition that appellant repaid the city in full pursuant to his plea agreement, counsel for the city observed, "I think he is hoping for a little more. If we get paid in full, he is going to get a dismissal."

{¶ 8} Appellant's new counsel, Michael Hoza, appeared on his behalf at the May 3, 2007 sentencing hearing. Hoza acknowledged that appellant had received receipts for "asbestos removal and demolition" on the Fifth Avenue properties in the approximate amount of $35,000 and requested a continuance of the sentencing hearing until October 10, 2007, the deadline for paying the demolition costs provided as a part of the plea agreement, in order that appellant could "dispose of the property and pay the city back." The sentencing hearing was rescheduled for October 18, 2007. The record reflects that counsel for the city stated that he would prefer to have the demolition funds paid on the Fifth Avenue properties prior to the October 18th hearing, so that the parties could "avoid the actual coming back." Hoza responded, "We're working on it." Appellant confirmed at the hearing that he was unrepresented on the Brentwood Avenue case.

{¶ 9} At the sentencing hearing on October 18, 2007, the city informed the trial court that the structure on Brentwood Avenue had been demolished at appellant's expense, but that the city had not been paid for the demolition of the structures on Fifth Avenue pursuant to the agreed plea within the time frame identified in the plea agreement. Appellant raised no objection at the hearing as to the $35,000 bill he received from the city. The only time that appellant's counsel referred to the bill was in reference to his client's inability to simply "write a check" for such a large amount of money.

{¶ 10} Appellant requested additional time to sell the Fifth Avenue properties in order to comply with the terms of the plea agreement. When appellant's counsel suggested that appellant could enter a payment plan with the city while he looked for a buyer, the trial court responded, "Well, that's a civil matter. I am working on the sentencing right now. That is a civil matter. You can continue to work with City [sic] on that."

{¶ 11} At sentencing, appellant's counsel explained that appellant would lose his job if he were incarcerated, which would negatively affect his ability to pay the demolition costs pursuant to the agreement. The trial court proceeded to sentence appellant to eight 60–day prison terms, with 30 days of each term suspended, to be served consecutively, and eight $100 fines, one for each of the eight violations in the complaints. The trial court placed appellant on five years of reporting probation until fines and costs are paid and ordered that restitution

be made for demolition, since appellant had failed to pay pursuant to his plea deal.

{¶ 12} The trial court stayed appellant's sentence until December 20, 2007, when appellant was instructed to appear in court with "a toothbrush" and "a good story convincing [the trial judge] why [appellant] shouldn't go to jail now." This timely appeal followed. Although appellant filed a motion to stay his sentence pending appeal, the docket does not reflect whether that motion was granted.

{¶ 13} Appellant contends that his conviction on the Brentwood Avenue violations should be reversed because his waiver of counsel in that matter was not knowingly or intelligently made. He further argues that the order of repayment in the Fifth Avenue cases should be vacated and the matters remanded to the trial court for a hearing. In the alternative, appellant asserts that the amount of repayment should be modified because the trial court only ordered appellant to repay the city for "demolition" in its judgment entries, and the $35,000 bill includes the cost of asbestos testing and removal. Finally, appellant contends that his sentences in all four of the cases constitute an abuse of discretion by the trial court and, as a consequence, should be reversed and the cases remanded for resentencing.

{¶ 14} Because the trial court did not inform appellant of the effect of his waiver of counsel in the Brentwood Avenue case, appellant's conviction is reversed in that matter. Because the trial court did not specify the amount of repayment to be made regarding the Fifth Avenue properties, appellant's sentences in those cases as they apply to demolition are vacated and the matter remanded as to this issue. Appellant's prison sentences in the Fifth Avenue cases are affirmed.

## ASSIGNMENT OF ERROR NO. 1

{¶ 15} "The trial court committed reversible error when on December 5, 2006 the court failed to properly advise the appellant, who appeared pro se, of his right to counsel before the appellant agreed to waive his right to counsel and plead no contest."

■ {¶ 16} "The Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he knowingly, voluntarily and intelligently elects to do so." *State v. Gibson* (1976), 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, paragraph one of the syllabus, citing *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.

{¶ 17} The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution provide that a criminal defendant has a right to counsel. The right to counsel extends to misdemeanor criminal cases that could result in the imposition of a jail sentence. *State v. Caynor* (2001), 142 Ohio App.3d 424, 755 N.E.2d 984.

{¶ 18} Ohio's Rules of Criminal Procedure contain provisions for a criminal defendant to be provided with counsel and to waive the right to counsel. Crim.R. 44 states:

{¶ 19} "(B) Where a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent him. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel.

{¶ 20} "(C) Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing."

{¶ 21} Appellant was charged with misdemeanor offenses, which are the type of petty offenses referred to in Crim.R. 44. The question in this appeal is whether the overall record reflects that appellant knowingly and voluntarily waived his right to counsel in this case.

{¶ 22} A criminal defendant may waive his right to counsel, but for a waiver to be effective, the court must make a sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes his right to counsel. *Gibson*, 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, at paragraph two of the syllabus. The defendant must make an intelligent and voluntary waiver with the knowledge that he will have to represent himself and that there are dangers inherent in self-representation. *State v. Ebersole* (1995), 107 Ohio App.3d 288, 293, 668 N.E.2d 934, citing *Faretta*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.

{¶ 23} "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *Gibson*, 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, at paragraph two of the syllabus. "Presuming a waiver of the Sixth Amendment right of an accused to the assistance of counsel from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." *State v. Wellman* (1974), 37 Ohio St.2d 162, 66 O.O.2d 353, 309 N.E.2d 915,

paragraph two of the syllabus, citing *Carnley v. Cochran* (1962), 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70.

■■ {¶ 24} In cases involving petty crimes, the waiver of counsel need not be in writing but must be made on the record in open court. *Jackson v. Wickline*, 153 Ohio App.3d 743, 2003-Ohio-4354, 795 N.E.2d 1248, ¶ 12. Most appellate courts, including this court, have held that a waiver of the right to counsel is not valid if the record does not include some discussion of "the hazards inherent in self-representation." See *State v. Dobrovich*, 7th Dist. No. 04BE56, 2005-Ohio-4688, 2005 WL 2172416, ¶ 21, citing *State v. Weiss* (1993), 92 Ohio App.3d 681, 685, 637 N.E.2d 47. Generally, Ohio courts determine whether under the totality of the circumstances the defendant's waiver of his or her right to counsel was voluntarily, knowingly, and intelligently given. *State v. Doyle*, 4th Dist. No. 04CA23, 2005-Ohio-4072, 2005 WL 1869674, at ¶ 11.

■ {¶ 25} Here, the trial court did not engage in any colloquy on the record with appellant regarding self-representation; it merely confirmed that appellant was waiving his right to counsel. The city argues that appellant was not unable to afford to hire counsel because he obtained counsel twice during his appearances before the housing court and because he owns a large amount of real estate. The city contends that appellant chose to represent himself because he planned to follow the same course of action in the Brentwood Avenue matter that he was following for the Fifth Avenue violations. The city further argues that appellant had the benefit of counsel at the sentencing hearing, even though attorney Hoza was only retained to represent him as regards the Fifth Avenue properties.

{¶ 26} The city's arguments support the conclusion that appellant's decision to waive counsel was voluntary but do not support the conclusion that the decision was informed. Prior to waiving the right to counsel, Ohio law requires that appellant must be informed of the effect of his waiver. Here, there was absolutely no effort on the record to ascertain whether appellant was aware of "the hazards inherent in self-representation." See *Dobrovich*, 2005-Ohio-4688, 2005 WL 2172416. Furthermore, caselaw does not require a showing of prejudice in order to reverse, but instead requires us to review the totality of the circumstances to determine whether appellant knowingly and intelligently waived his right to counsel. *Doyle*, 2005-Ohio-4072. The record here does not allow us to make such a review. Accordingly, appellant's first assignment of error is sustained, and the judgment of the Youngstown Municipal Court is reversed. Appellant's conviction in the Brentwood Avenue case is hereby reversed and remanded because the record does not reflect a knowing and intelligent waiver of his right to counsel.

ASSIGNMENT OF ERROR NO. 2

{¶ 27} "The trial court committed reversible error by ordering defendant-appellant to pay restitution in an amount bearing no reasonable relationship to the actual loss suffered by the city and which amount is unsubstantiated by the evidentiary record of the proceedings held on April 12, 2007, May 3, 2007, and October 18, 2007."

{¶ 28} The respective sentencing entries on the Fifth Avenue properties read, "[D]ef to make restitution for demolition 214 Fifth Avenue," "[D]ef pays restitution for demolition at 220 Fifth Avenue," and "[D]ef to make restitution to city for demolition 216 Fifth Avenue." Appellant contends that the $35,000 calculation by the city bears no reasonable relationship to the actual loss suffered and that the sentencing order limits the repayment amount to demolition costs, which should not include asbestos testing and abating.

{¶ 29} Misdemeanor financial sanctions are governed by R.C. 2929.28. R.C. 2929.28(A)(1) authorizes a trial court to order a misdemeanor offender to pay restitution to a victim in an amount based upon the victim's economic loss. "[T]he court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information." R.C. 2929.28(A)(1).

{¶ 30} The trial court is required to hold a hearing on restitution if the offender or victim disputes the amount. R.C. 2929.18(A)(1). If the trial court holds an evidentiary hearing, the victim has the burden to prove the amount of restitution by a preponderance of the evidence. R.C. 2929.28(A)(1). We review an order of restitution under the abuse-of-discretion standard. *State v. Schandel*, 7th Dist. No. 07CA848, 2008-Ohio-6359, 2008 WL 5124566, ¶ 154. It is an abuse of discretion for a trial court to order restitution in an amount that does not bear a reasonable relationship to the actual loss suffered. Id.

{¶ 31} We note here that pursuant to his failed plea agreement, appellant agreed on October 8, 2006, to "repay the City of Youngstown for all its expenses and costs in demolishing, testing, and abating said structures within one year of the date of [the] entry or six months following completion of demolition whichever was later." At the time of his agreement, appellant was represented by counsel. It is apparent from the record that appellant and the city were operating under the assumption that fulfillment of this agreement could lead to dismissal of the charges against appellant. Hence, the fact of and basis for restitution, if not the exact amount, was agreed to by appellant.

{¶ 32} Appellant now contends that the award does not reflect the actual economic loss suffered by the city; however, he did not dispute the amount of the

award before the trial court at the time of sentencing. Numerous appellate courts have held that when an offender fails to object to the restitution order, he waives all but plain error with respect to that order. *State v. Johnson,* 4th Dist. No. L 944384, 2004-Ohio-2236, 2004 WL 944384, ¶ 8; *State v. Bemmes,* 1st Dist. No. C–010522, 2002-Ohio-1905, 2002 WL 507337; *Dayton v. Santos* (Jan. 12, 2001), 2nd Dist. No. 18324, 2001 WL 28672; *State v. Agnes* (Oct. 6, 2000), 11th Dist No. 99–L–104, 2000 WL 1488231; *State v. Gears* (1999), 135 Ohio App.3d 297, 299, 733 N.E.2d 683.

{¶ 33} When a criminal defendant fails to object to an error at trial, he waives that error unless it affects a substantial right. Crim.R. 52(B). A plain error in the proceedings that affects a substantial right may be noticed even though the defendant failed to bring the error to the attention of the court. Id. The Supreme Court of Ohio has cautioned that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.

{¶ 34} Appellant argues that despite his earlier agreement to repay demolition costs to the city, the trial court should have conducted a hearing on restitution, and since it did not, the trial court relied upon insufficient evidence to establish the amount of restitution in this case. He also asks us to modify the amount of the restitution award, pursuant to R.C. 2953.08(G), because the judgment entry appears to order restitution only for demolition, not for asbestos removal and cleanup costs.

{¶ 35} Appellant contends in his brief that counsel for the city conceded that the issue of the amount of repayment was "hotly contested" at the sentencing hearing. In fact, counsel for the city, summarizing the facts leading up to sentencing, stated, "Well, Your Honor, in regards to the Fifth Avenue property, [sic] as the Court hopefully recalls, that was quite a hotly contested matter at the time. Three extremely decrepit properties around in the area of YSU." Nowhere in the record is the amount of repayment ever characterized by the city as "hotly contested."

{¶ 36} As a matter of fact, the trial court was never put on notice that appellant disputed the amount of restitution asserted by the city. Just the opposite, appellant's counsel acknowledged that he had received the bill for the Fifth Avenue properties at the April 12, 2007 hearing and asked for some additional time to allow appellant to sell the property in order to reimburse the city. At the May 3, 2007 hearing, counsel for appellant explained to the trial court that appellant could not be expected to simply write a check for "approximately $35,000.00."

{¶ 37} Furthermore, counsel for the city stated at the sentencing hearing that "[t]he understanding reached was that the City would take it down and [Appellant] would pay for the demolition within a set period of time and that has not occurred, and I realize it is a significant amount of money *but it is an amount of money that was contemplated, that was discussed throughout*." (Emphasis added.) Appellant's counsel did not object to the city's characterization of the negotiations between the parties.

{¶ 38} Finally, appellant's argument that the trial court did not specifically include the cost of asbestos removal and abatement in its restitution order is specious, as those costs are always part and parcel of the costs of demolition of old structures likely to contain asbestos. In fact, the agreement entered into by appellant at the time of his no contest plea specifically states that appellant was responsible to pay all the city's expenses in connection with demolition: "all * * * costs in demolishing, testing, and abating said structures."

{¶ 39} Because the trial court was never informed that a dispute existed with respect to the amount of restitution, we find that the trial court did not commit plain error in accepting the city's calculation based upon receipts provided to appellant at the April 12, 2007 hearing.

{¶ 40} Appellant premises his second argument on subsection G of R.C. 2953.08, captioned "Grounds for appeal by defendant or prosecutor of sentence for felony; appeal cost oversight committee." Because that statute does not govern misdemeanor sentences, appellant's reliance upon R.C. 2953.08(G) is misplaced. However, R.C. 2929.28 does state, "If the court requires restitution, the court shall order that the restitution be made to the victim in open court or to the adult probation department that serves the jurisdiction or the clerk of the court on behalf of the victim."

{¶ 41} Here, the trial court ordered restitution but never specified the exact amount. In fact, an exact amount was never made a part of the record by either party. While throughout the proceedings it appears that the parties were aware of the exact costs of demolition, they did not state the exact amount on the record. The record reflects that both parties merely estimated the costs as almost $35,000. The entry ordering restitution for demolition also fails to state an actual amount. The Fifth District Court of Appeals has held that a trial court's failure to determine the exact amount of restitution at sentencing as required by R.C. 2929.18 constitutes plain error. *State v. Smith* (October 25, 2001), 5th Dist. No. CT2001–31, 2001 WL 1913821, *3.

{¶ 42} The trial court did not specify the amount of restitution at the sentencing hearing nor journalize the amount of restitution in its judgment entries. While appellant's second assignment of error should be overruled in

part (as no new hearing is required to determine restitution), the assignment must be sustained in part, as the entry fails to state the amount of restitution ordered as regards the Fifth Avenue properties. Accordingly, the judgment of the Youngstown Municipal Court as to the Fifth Avenue cases is reversed in part and remanded for a determination solely on the issue of the amount of restitution.

## ASSIGNMENT OF ERROR NO. 3

{¶ 43} "The trial court committed reversible error and abused its discretion in imposing consecutive jail sentences contrary to the consistency and proportionality guidelines of Ohio Revised Code Section 2929.21(B) and the sentencing factors set forth in Ohio Revised Code Section 2929.22."

{¶ 44} Misdemeanor sentences are reviewed under an abuse-of-discretion standard. R.C. 2929.22; *State v. Frazier*, 158 Ohio App.3d 407, 2004-Ohio-4506, 815 N.E.2d 1155, ¶ 15. Abuse of discretion means more than a mere error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 404 N.E.2d 144. An appellate court must presume that the trial court's findings were correct. *In re Slusser* (2000), 140 Ohio App.3d 480, 487, 748 N.E.2d 105.

{¶ 45} The overriding purposes of misdemeanor sentencing are to punish the offender and to protect the public from future crime by the offender and others. R.C. 2929.21(A). In order to achieve these purposes, the sentencing court shall consider the impact of the offense on the victim, the need to change the offender's behavior, the need to rehabilitate the offender, and the desire to make restitution to the victim and/or the public. Id.

{¶ 46} A misdemeanor sentence shall be reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing set forth above, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar offenses committed by similar offenders. R.C. 2929.21(B). The sentencing court has the discretion to determine the most appropriate method of achieving the purposes and principles of sentencing. R.C. 2929.22(A).

{¶ 47} In determining the appropriate sentence for a misdemeanor, the court shall consider all of the following factors: (a) the nature and circumstances of the offense; (b) whether the circumstances surrounding the offender and the offense indicate that the offender has a history of persistent criminal activity and that the offender's character and condition reveal a substantial risk that the offender will commit another offense; (c) whether the circumstances regarding the offender and the offense indicate that the offender's history, character, and condition reveal a substantial risk that the offender will be a danger to others and that the

offender's conduct has been characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences; (d) whether the victim's youth, age, disability, or other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious; (e) whether the offender is likely to commit future crimes in general. R.C. 2929.22(B)(1). The court may also consider any other relevant factors. R.C. 2929.22(B)(2). Before imposing a jail term as a sentence for a misdemeanor, the court shall consider the appropriateness of imposing a community-control sanction. R.C. 2929.22(C).

{¶ 48} When the court's sentence is within the statutory limit, a reviewing court will presume that the trial judge followed the standards in R.C. 2929.22, absent a showing to the contrary. *State v. Crable*, 7th Dist. No. 04–BE–17, 2004-Ohio-6812, 2004 WL 2913280, ¶ 24. Failing to explain the statutory reasons behind a certain misdemeanor sentence is fatal only if there are several mitigating factors and no aggravating factor that justify the maximum penalty given at the sentencing hearing. Id., citing *State v. Flors* (1987), 38 Ohio App.3d 133, 140, 528 N.E.2d 950.

{¶ 49} Appellant advances a number of arguments to support his conclusion that the trial court abused its discretion when it sentenced him to eight 60–day sentences, with 30 days of each sentence suspended. Appellant first argues that the trial court should have imposed community-control sanctions because he will lose his job if he serves an eight-month prison term. Appellant asserts that the goals of misdemeanor sentencing, particularly restitution to the victim, will not be served because imprisonment will negatively affect his ability to repay the city. Appellant's argument is misplaced, as it suggests that no defendant should ever be given a prison sentence because it will impact his or her ability to pay restitution.

{¶ 50} Second, appellant claims that the demolition of the offending structures is a mitigating factor that the trial court ignored at sentencing. He argues:

{¶ 51} "Appellant was found guilty of housing code violations. Since the time of his plea, the matter was corrected by demolition of the structures. In the case of the Brentwood Property demolition was paid for [sic] the Appellant. The fact that the condemned structures have now been removed constitute [sic] mitigating factors under R.C. 2929.22(C) militating against the imposition of a jail sentence."

{¶ 52} While appellant paid for the demolition of the Brentwood Avenue property, the foregoing argument blithely ignores the fact that it was the city of Youngstown, not appellant, in this case who paid for the demolition of appellant's offending Fifth Avenue structures. Appellant violated the terms of his plea

agreement in those cases by failing to timely reimburse the city for the demolitions.

{¶ 53} Next, in his reply brief, appellant states, "Appellee needles the point that the houses were in poor condition and threatened public safety." Appellant's effort to trivialize the city's concern for public safety does nothing to suggest that the trial court committed an abuse of discretion.

{¶ 54} Appellant also argues that "[i]t is alleged without factual support that [Appellant] had the funds to pay restitution but chose not to, and that his actions show no remorse." Appellant continues, "Whether these impressions have impacted the conduct of the prosecution in the present action is simply one of speculation, but, in any event, they should have no bearing on determination of the legal issue of whether the trial court abused its discretion in imposing a severely harsh sentence on [appellant]."

{¶ 55} While we agree that appellant's sentences cannot be imposed based upon his failure to comply with the plea agreement, we also agree that any such argument in this case is purely speculative. While appellant clearly hoped to have the charges against him dismissed regarding the Fifth Avenue properties should he timely repay the city for their demolition costs, there is no evidence in the record to suggest that the trial court's sentences were premised upon the broken plea agreement. As a matter of fact, the trial court acknowledged at the October 18, 2007 hearing that restitution was a civil matter and that it intended to proceed to sentencing.

{¶ 56} Finally, appellant argues that he received the same sentence for the two charges in the Brentwood Avenue case as he did on the six charges in the Fifth Avenue cases, despite the fact that he actually did pay for the demolition of the Brentwood Avenue structure. We have reversed and remanded appellant's conviction on the Brentwood Avenue case. The propriety of his sentence in that case is moot.

{¶ 57} Appellant's arguments do not support the conclusion that the trial court abused its discretion. Accordingly, appellant's third assignment of error is overruled and his jail sentences for charges filed regarding the Fifth Avenue properties are affirmed.

{¶ 58} In summary, appellant's first assignment of error is sustained, the judgment of the trial court in the Brentwood Avenue case is vacated, and appellant is discharged based on the trial court's failure to inform appellant of the effect of his waiver of counsel. Appellant's second assignment of error is overruled in part and sustained in part, and the judgment of the trial court regarding the Fifth Avenue properties is reversed and remanded to the trial court for the sole purpose of specifying the amount of restitution. Finally,

because the trial court did not abuse its discretion in sentencing appellant, his third assignment of error is overruled.

Judgment affirmed in part
and reversed in part,
and cause remanded.

V<small>UKOVICH</small>, P.J., and D<small>ONOFRIO</small>, J., concur.