[Cite as *Estate of Lytle v. Wilson*, 2015-Ohio-108.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101522**

**ESTATE OF TRACY J. LYTLE**

PLAINTIFF-APPELLANT

vs.

**JEWEL D. WILSON, ET AL.**

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos.   CV-08-649320 and CV-11-761366

**BEFORE:**   E.A. Gallagher, J., Jones, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**   January 15, 2015

**ATTORNEYS FOR APPELLAN**T

Natalie F. Grubb
Mark E. Owens
Grubb and Associates, L.P.A.
437 W. Lafayette Road
Suite 260-A
Medina, Ohio 44256

**FOR APPELLEE**

Jewel D. Wilson
25895 John Road
Olmsted Falls, Ohio 44138

**For Bureau of Workers' Compensation**

Scott D. Kalish
Scott Kalish Co., L.L.C.
1468 West 9th Street
Suite 405
Cleveland, Ohio 44113

**For Travelers Insurance**

Ed E. Duncan
Tucker Ellis & West L.L.P.
925 Euclid Avenue
1150 Huntington Building
Cleveland, Ohio 44115

**For Tremont, Inc.**

Tremont, Inc. pro se
775 Berea Industrial Parkway
Berea, Ohio 44017

EILEEN A. GALLAGHER, J.:

{¶1} Plaintiff-appellant the estate of Tracy Lytle appeals from the decision of the trial court denying her motion to enforce a settlement agreement against the Bureau of Workers' Compensation ("BWC"). Finding no merit to the instant appeal, we affirm the decision of the trial court.

{¶2} Tracy Lytle was involved in an automobile accident with Jewel D. Wilson on March 26, 2004. Lytle was driving a truck owned by her employer, Tremont, Inc., at the time of the accident. The parties did not dispute that Lytle was not at fault for the accident. Subsequently, Lytle filed a workers' compensation claim with the BWC, which was allowed for several medical conditions. Lytle also filed a lawsuit in the Cuyahoga County Common Pleas Court ("Lawsuit I") against Jewel Wilson, Tremont Inc., Travelers Insurance and Progressive Insurance. Lytle voluntarily dismissed the action and refiled it ("Lawsuit II") on January 30, 2008. In her lawsuit, Lytle alleged claims of negligence, uninsured-underinsured motorist, declaratory judgment, breach of contract and breach of duty of good faith.

{¶3} During the pendency of the lawsuit, Lytle died and Carol A. Lytle was named the administrator of her estate. The parties reached a tentative settlement. However, prior to its execution, the Bureau of Workers' Compensation moved to intervene in Lawsuit II. The BWC asserted that it had a statutory right to subrogation/lien against the proceeds of the underlying settlement agreement for $203,587.53 in compensation it paid to Lytle. The trial court granted the BWC's motion to intervene.

{¶4} Lytle's estate and the BWC eventually reached a settlement agreement whereby the BWC received $88,500 from the settlement, which the estate received in Lawsuit II. The parties executed a settlement and release that they filed in the common pleas court.

**{¶5}** The BWC also conducted an investigation into the conduct of Lytle and the estate's attorney, Natalie Grubb. The BWC alleged that Grubb conspired to commit workers' compensation fraud with Lytle by employing Lytle while she was receiving Temporary Total Disability benefits from the BWC. The BWC confirmed Lytle's employment with Grubb through bank records, interviews and written statements from former employees of Grubb. The BWC referred its findings to the Ohio Attorney General's Office ("OAG"), which recommended prosecuting Grubb for her actions.

**{¶6}** Grubb reached a plea agreement with the OAG under which she pleaded guilty to a single misdemeanor count of complicity to commit workers' compensation fraud. As part of her sentence, Grubb agreed to pay $14,441 in restitution, which represented $7,709.62 in temporary total disability payments, that the BWC paid to Lytle while she was working for Grubb plus $6,731.55, which the BWC incurred in investigating Grubb. Grubb also paid a $500 fine that included court costs to the Franklin County Municipal Court.

**{¶7}** Lytle's estate, which is now, and always has been represented by Grubb, filed a motion to enforce settlement. In the motion, the estate sought an order mandating that the BWC return the $14,441 because its acceptance of the funds violated the terms of the settlement agreement. The estate argues that the monies paid by Grubb are in violation, and in excess, of the agreement's terms and that the $88,500 paid by the estate to the BWC represents the full and final settlement of any monies owed to the BWC.

**{¶8}** The trial court disagreed and determined that "the language in the settlement agreement at issue that refers to 'claims, causes of action and liabilities * * * related to the automobile accident involving [plaintiff and defendant]' does not include the restitution that was

ordered as a result of a plea agreement entered into by plaintiff's counsel, Natalie F. Grubb."

The trial court denied the estate's motion to enforce settlement agreement as against the BWC.

The estate appeals, raising the following assigned error:

> Did the trial court err as a matter of law by failing to enforce the clear and unambiguous release terms in the parties' settlement agreement to bar the BWC's claim for restitution payments from Attorney Grubb arising from Tracy Lytle's worker's compensation claim.

{¶9} The standard of review to be applied to rulings on a motion to enforce a settlement agreement depends primarily on the question presented. *Chirchiglia v. Adm. Bur. Of Workers' Comp.*, 138 Ohio App.3d 676, 679, 742 N.E.2d 180 (7th Dist. 2000). If the question is a factual or evidentiary one, the trial court's finding will not be overturned if there was sufficient evidence to support such finding. *Id.* However, if the issue is a question of contract law, reviewing courts must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law. *Id.*

{¶10} The present case constitutes a factual question, i.e., whether the amount of money paid by Grubb to the BWC violated the terms and conditions of the settlement agreement entered into by the estate and the BWC. If there was sufficient evidence to support the trial court's conclusion that Grubb's payments did not violate the settlement agreement, we must affirm the trial court's decision. *Id.*

{¶11} The settlement agreement reads in part:

> As consideration for all the promises the Parties exchange in this agreement, the Estate agrees that a total of Eighty-Eight Thousand Five Hundred Dollars ($88,500) will be paid to the BWC * * * out of the proceeds of the Underlying Settlement Agreement.

{¶12} The agreement contains a "General Release of Claims" section that reads as follows:

> In consideration for the payments outlined in Paragraph 1 above (made by Travelers on behalf of the Estate) the BWC releases the Estate, its agents, heirs, beneficiaries, attorneys and representatives from all claims, causes of action, and liabilities of any kind, known or unknown, regardless of their kind, arising from the dawn of time to the date that representatives of the BWC sign this Agreement, including but not limited to, all claims set forth or that could be asserted against the Estate in Lawsuit 2, Lawsuit 3, Probate Claim, or in any way related to the automobile accident involving Lytle and Wilson, which resulted in a workers' compensation claim filed by Tracy Lytle. The BWC agrees that, other than Lawsuit 2, Lawsuit 3, and the Probate Claim, BWC has not filed any complaints, lawsuits, or arbitration demands against the Estate in any court, agency or other forum. The BWC agrees further that it is releasing and discharging all claims against Tremont, Inc., and Travelers, and their subsidiaries and affiliate companies/entities.

{¶13} Initially, we note that the estate does not have standing to recoup the funds paid by Grubb to the BWC. Here, the estate, with Grubb as its representative, seeks to utilize the Settlement Agreement to recoup monies that it did not pay. Specifically, the specific amount the estate seeks to recoup is not from the $88,500 paid by Travelers but instead is from the restitution ordered as part of Grubb's criminal case. Thus, Grubb is the party who should seek its return, not the estate.

{¶14} Even if we were to ignore the issue of standing, Grubb failed to raise her objection to the restitution order at the proper time and with the proper court.

{¶15} As stated above, Grubb paid restitution as part of her criminal sentence. R.C. 2929.28 authorizes the imposition of financial sanctions in misdemeanor cases and specifically authorizes as a financial sanction restitution to the victim for their economic loss. In the present case, as a result of a plea bargain, Grubb agreed to pay a total of $14,441 in restitution — $7,709.62 in temporary total disability compensation the BWC paid Lytle while she was working

for Grubb, and $6,731.55 the BWC incurred in investigating Grubb and Lytle's behavior. Grubb agreed to this amount and received a reduction in the seriousness of her charge from a felony to a misdemeanor. Grubb is now in no position to challenge the order.

{¶16} The time for Grubb to raise the release of all claims as an objection to the imposition of restitution as a sanction for her crime was at her January 28, 2013 sentencing hearing. *See State v. Johnson*, 4th Dist. Washington No. L944384, 2004-Ohio-2236; *State v. Bemmes*, 1st Dist. Hamilton No. C-010522, 2002-Ohio-1905; *State v. Downie*, 183 Ohio App.3d 665, 2009-Ohio-4643, 918 N.E.2d 218 (7th Dist.) Having failed to raise this issue at the time of her sentence, we find that Grubb waived all but plain error review; we further fail to find plain error in this case. Grubb had ample opportunity to challenge the restitution order, having failed to do so at the proper time and with the proper court, she cannot now use the settlement agreement as a tool to recoup the funds she herself agreed to pay.

{¶17} The estate's sole assignment of error is overruled. The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN A. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and

MARY EILEEN KILBANE, J., CONCUR